UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DENIS GIBBONS, et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al.,<br><br>Defendant(s). | Case No. 2:14-CV-586 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant Bank of America, N.A.'s (hereinafter "BofA") motion to dismiss. (Doc. # 50). Plaintiffs Dennis Gibbons and Julie Pelekanos (hereinafter "plaintiffs") filed a response, (doc. # 53), and BofA filed a reply, (doc. # 56).

Also before the court is defendant National Union Fire Insurance Company's (hereinafter "National Union") motion to dismiss. (Doc. # 51). Plaintiffs filed a response, (doc. # 54), and National Union filed a reply, (doc. # 55).

Also before the court are plaintiffs' requests for judicial notice. (Docs. # 53-1, 54-1).

**I.     Background**

This action arises from defendants' marketing and sale of "blanket disability" insurance policies to BofA customers. (Doc. # 45). BofA sent correspondence to customers promoting the policies. BofA also provided National Union with these customers' personal information, so that National Union could contact customers regarding the policies. (Doc. # 45).

Potential insureds were told that they were being offered the policies because they were BofA customers, and that BofA would pay their premiums for an initial period. (Doc. # 45). After

**James C. Mahan**
**U.S. District Judge**

1  the "free" initial time period, the premiums for the policy would be deducted from the insureds'
2  bank accounts or charged to the insureds' credit card accounts. (Doc. # 45).

3  Through mail marketing and telemarketing, defendants described the instant insurance
4  policies as "blanket disability coverage." (Doc. # 45). Plaintiff Dennis Gibbons ("Gibbons")
5  received written materials at his home promising "accident insurance coverage" in the event he
6  became totally disabled due to an accident. (Doc. # 45).

7  Based on the representations in the written materials, Gibbons enrolled in the coverage
8  plan. (Doc. # 45). Gibbons subsequently received two notices of coverage and two "description
9  of coverage" documents, all describing the terms of his policy. (Doc. # 45).

10  Similarly, plaintiff Julie Pelekanos ("Pelekanos") purchased the insurance coverage at
11  issue based on defendants' representations. (Doc. # 45). Pelekanos spoke with a telemarketer who
12  explained that the policy would provide benefits if Pelekanos suffered an accident which "changed
13  her life in some way." (Doc. # 45).

14  The telemarketer stated that the policy did not require total disability to afford benefits.
15  (Doc. # 45). Pelekanos also received written materials by mail, which contributed to her
16  understanding of the policy's scope of coverage. (Doc. # 45). After enrolling in the policy,
17  Pelekanos received a notice of coverage. (Doc. # 45).

18  Plaintiffs eventually became totally disabled due to accidents and filed claims for disability
19  benefits with National Union. (Doc. # 45). National Union denied plaintiffs' claims on the basis
20  that their accidents did not result in dismemberment, paralysis, or blindness. (Doc. # 45).

21  At this time, plaintiffs discovered that these injuries were all that their policies covered.
22  (Doc. # 45). Plaintiffs allege that defendants failed to truthfully disclose the nature of the insurance
23  policies at issue. (Doc. # 45). National Union never sent the full policy documents to plaintiffs.
24  (Doc. # 45).

25  On April 17, 2014, plaintiffs filed a complaint in this court alleging breach of contract and
26  breach of the covenant of good faith and fair dealing against National Union, and fraud/intentional
27  misrepresentation and conspiracy to defraud against both defendants. (Doc. # 1).

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

On September 18, 2014, plaintiffs filed a motion to amend their complaint. (Doc. # 35). On October 16, 2014, the court granted the motion. (Doc. # 44). On October 20, 2014, plaintiffs filed an amended complaint asserting the same causes of action. (Doc. # 45). Defendants then filed the instant motions.

**II.     Legal Standard**

*i.     Judicial notice*

Federal Rule of Evidence 201 provides for judicial notice of adjudicative facts. Under Rule 201(b)(2), the court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2).

Rule 201(c)(2) states that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute. *See United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011); *see also Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citations and quotation marks omitted).

*ii.     12(b)(6) dismissal*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

**James C. Mahan**
**U.S. District Judge**

- 3 -

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

iii.     Rule 9(b)

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

**James C. Mahan**
**U.S. District Judge**

- 4 -

Federal Rule of Civil Procedure 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted).

**III.  Discussion**

*i.  Judicial notice*

Plaintiffs request that the court take judicial notice of certain pleadings in a California Superior Court case against defendants.  Plaintiffs also ask the court to take judicial notice of the "Multistate Examination, Regulatory Settlement Agreement" between National Union and the "various departments of insurance in the United States of America."  (Doc. # 54-1).  Plaintiffs attach these documents to their requests.

Plaintiffs ask the court to take judicial notice of documents that are not adjudicative facts.  Further, these documents are not binding on the court and are not relevant to the court's consideration of the instant motions to dismiss.  For these reasons, plaintiffs' requests for judicial notice will be denied.  The court will now consider the motions to dismiss.

*ii.  Motion to dismiss*

Defendants move to dismiss all of plaintiffs' claims against them.  Accordingly, the court will address each of plaintiffs' claims in turn.

A.  Breach of contract

In Nevada, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

Plaintiffs assert a cause of action for breach of contract against National Union, alleging that it improperly refused to pay plaintiffs the benefits afforded under their policies.  (Doc. # 45).

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  Plaintiffs reference multiple contractual provisions in support of this cause of action, which they
2  contend show coverage of their claims.  (Doc. # 45).
3        In particular, plaintiffs allege that they received policy notices in which National Union
4  agreed to pay monthly disability benefits in the event plaintiffs became unable to perform their
5  normal job duties.  (Doc. # 45).  Plaintiffs also state that they received "Blanket Accident
6  Insurance" descriptions of coverage describing their entitlement to insurance benefits should
7  they become "permanently totally disabled."  (Doc. # 45).
8        According to plaintiffs' complaint, National Union defined injury to include bodily injury
9  sustained from an accident. (Doc. # 45).  Plaintiffs assert that they paid all premiums and that
10  National Union therefore breached the contract by refusing to pay benefits, causing plaintiffs
11  damages.  (Doc. # 45).
12        National Union contends that it properly denied plaintiffs' claims for failure to meet the
13  contract's definition of "permanent total disability."  (Doc. # 51).  National Union notes that
14  plaintiffs' descriptions of coverage clearly define "permanent total disability" as requiring
15  dismemberment, blindness, or paralysis. (Doc. # 51).  In support of its motion to dismiss, National
16  Union filed the declaration of Priscilla L. O'Briant, attaching copies of the descriptions of coverage
17  issued to and disclosed by plaintiffs pursuant to Federal Rule of Civil Procedure 26.  (Doc. # 52).
18        Plaintiffs contend that these documents are improperly considered on a motion to dismiss.
19  However, the Ninth Circuit has held that "a court may consider a writing referenced in a complaint
20  but not explicitly incorporated therein if the complaint relies on the document and its authenticity
21  is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  This rule prevents
22  plaintiffs from "surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon
23  which their claims are based . . . ." *Id.*
24        Plaintiffs unsuccessfully attempt to dispute the authenticity of these documents. (Doc. #
25  54).  Plaintiffs maintain that which documents they received, and at what time, are matters that
26  may be considered only at the summary judgment stage.  (Doc. # 54).  However, plaintiffs
27  produced these documents to defendants pursuant to Rule 26.  (Doc. # 52).  Plaintiffs provide no
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  legitimate reason to question the authenticity of these documents, and the court finds that they are
2  properly considered in ruling on the instant motion.
3        The contents of the relevant descriptions of coverage directly contradict plaintiffs' breach
4  of contract allegations.  Plaintiffs do not allege that they met the definition of disability set forth
5  in the descriptions of coverage.  (Doc. # 45).  Upon proper consideration of these coverage
6  documents, plaintiffs fail to state a plausible claim for breach of contract.  Accordingly, plaintiffs'
7  breach of contract claim will be dismissed.

8        *B. Breach of the covenant of good faith and fair dealing*

9        Plaintiffs next assert a claim for breach of the covenant of good faith and fair dealing
10 against National Union.  (Doc. # 45).  Plaintiffs allege that National Union acted in bad faith by
11 refusing to pay plaintiffs' benefits.  (Doc. # 45).
12       In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing
13 in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev.
14 1989).  This implied covenant requires that parties "act in a manner that is faithful to the purpose
15 of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.*, 886
16 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).
17       In order to prevail on this claim against an insurance company, a plaintiff must
18 demonstrate: (1) the insurer denied or refused to pay the insured's claim; (2) without any reasonable
19 basis; and (3) the insurer had knowledge or awareness of the lack of any reasonable basis to deny
20 coverage, or the insurer acted with reckless disregard as to the unreasonableness of the denial.
21 *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996); *Schumacher v. State Farm Fire &*
22 *Cas.*, 467 F. Supp. 2d 1090, 1096 (D. Nev. 2006).  An insurer is not liable for bad faith so long as
23 it had a reasonable basis to deny coverage.  *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*,
24 863 F. Supp. 1237, 1249 (D. Nev. 1994).
25       As addressed above, plaintiffs fail to state a claim for breach of contract because the
26 descriptions of coverage contradict the allegations of the complaint.  As National Union contends,
27 plaintiffs' bad faith claim fails because they do not assert a valid breach of contract claim.
28

**James C. Mahan**
**U.S. District Judge**

- 7 -

Accordingly, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will also be dismissed.

### C. Fraud

Plaintiffs' amended complaint includes a claim for fraud/intentional misrepresentation against both National Union and BofA. (Doc. # 45). Plaintiffs allege that defendants' agents misrepresented and concealed the true nature of the policies at issue. (Doc. # 45). Defendants seek dismissal of this claim.

To state a claim for fraud under Nevada law, a plaintiff must allege: (1) defendant made a false representation; (2) defendant knew or believed that its representation was false or that defendant had an insufficient basis for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) plaintiff suffered damages as a result of relying on the misrepresentation. *See Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (internal citations omitted).

#### a. BofA's attached documents

In support of their motions to dismiss, defendants include documents that they contend undermine plaintiffs' allegations of fraud. (Docs. # 50, 52). As previously noted, National Union includes copies of the notices and descriptions of coverage disclosed by plaintiffs pursuant to Rule 26. Pursuant to the court's prior analysis with regard to plaintiffs' breach of contract claim, these documents are properly considered by the court in deciding the instant motion.

In support of its motion to dismiss plaintiffs' fraud claim, BofA includes a copy of the letter sent to plaintiff Gibbons from BofA agent Kathy Shaffer regarding the offered insurance policy. (Doc. # 50-1). BofA also attaches a copy of the lower return portion of this letter, signed by plaintiff Gibbons. (Doc. # 50-2). Finally, BofA includes a transcript and recording of plaintiff Pelekanos's conversation with a telemarketer regarding the policy. (Docs. # 50-3, 50-4).

##### i. BofA's enrollment letter

BofA's attached letter may properly be considered by the court. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Defendants may produce documents signed by plaintiffs in their filings supporting a motion to dismiss. *See Cervantes v. Countrywide Home Loans, Inc.*, 656

1  F.3d 1034, 1047 (9th Cir. 2011) (affirming district court consideration of signed deed of trust,
2  noting that signature constituted plaintiffs' acknowledgement that they were on notice of its
3  contents).

4  Plaintiffs contend that whether, when, and what version of this letter was sent to them are
5  matters for discovery. (Doc. # 53). However, plaintiffs' responses to defendants' motions focus
6  largely on irrelevant factors. Plaintiff Gibbons states that he received the letter, and relies on its
7  contents in alleging fraud. (Doc. # 45). Further, while plaintiffs attempt to argue that BofA's
8  attached letter is "unauthenticated," they also rely on the letter in attempting to undercut BofA's
9  defenses. (Doc. # 53).

10  The court will consider the letter, in conjunction with plaintiffs' complaint and the
11  documents produced by National Union, in ruling on the motion to dismiss plaintiffs' fraud claim.

12              *ii.   Telemarketing materials*

13  Plaintiff Pelekanos also relies on the telemarketing call in alleging fraud against
14  defendants. (Doc. # 45). BofA argues that the transcript and recording of this call may properly
15  be considered by the court under *Swartz*. (Doc. # 50).

16  This argument is less convincing. Plaintiffs contest the authenticity of the transcript,
17  contending that it is "a partial transcript of what is obviously a much longer telemarketing sales
18  call . . . ." (Doc. # 53). This evidence differs substantially from the letter, which was signed by
19  plaintiff Gibbons.

20  While plaintiff Pelekanos's fraud allegations focus on the telemarketing call, BofA
21  provides insufficient information regarding the authenticity of the transcript. (Doc. # 45).
22  Accordingly, the court will rule on the motion to dismiss plaintiffs' fraud claim without
23  considering the transcript and recording produced by BofA.

24              *b.  Material misrepresentation*

25  National Union contends that plaintiffs fail to allege a material misrepresentation. (Doc. #
26  51). It claims that it cannot be liable for fraud in the inducement based on any pre-contract
27  promises of coverage because they conflict with the written documents at issue. (Doc. # 51).

28

**James C. Mahan**
**U.S. District Judge**

- 9 -

1  National Union alternatively contends that any allegations of fraud based on post-contract
2  representations are barred by the parol evidence rule.

3  Plaintiffs' complaint fails to state a claim for fraud. Misrepresentations that conflict with
4  the terms of a writing cannot serve as the basis for a fraud claim. *See Road & Highway Builders*
5  *v. N. Nev. Rebar, Inc.*, 284 P.3d 377, 381 (Nev. 2012); *Daly v. Del E. Webb Corp.*, 609 P.2d 319,
6  320 (Nev. 1980); *Tallman v. First Nat'l Bank of Nev.*, 208 P.2d 302, 307 (Nev. 1949).

7  Plaintiff Gibbons purchased coverage through BofA's offer letter, which explicitly
8  includes the relevant definition of disability. He cannot allege a material misrepresentation based
9  on select provisions in the letter. Further, both plaintiffs acknowledge receipt of certain notices or
10 descriptions of coverage. (Doc. # 45). These documents unambiguously set forth the scope of
11 coverage, including the relevant definition of permanent and total disability. (Doc. # 52).

12 On this basis, plaintiffs' claim for fraud/misrepresentation will be dismissed.

### c. *Justifiable reliance*

14 National Union also correctly notes that plaintiffs fail to show justifiable reliance.
15 Plaintiffs cannot argue justifiable reliance on any alleged misrepresentations, because plaintiffs
16 had an obligation to read the notices and descriptions of coverage. *See Farms Ins. Exch. v. Neal*,
17 64 P.3d 472, 473 (Nev. 2003) (noting "responsibility of the insured to read the insuring agreement
18 and attach the plain meaning to the provisions therein").

19 Even if plaintiffs did not become aware of the true nature of the policies until they received
20 the relevant notices and descriptions of coverage, these documents explicitly spelled out the policy
21 limitations at issue. Upon clarification of any confusion regarding the policies, plaintiffs could
22 have canceled their policies before they made any payments.

23 Plaintiffs claim that pre-contract misrepresentations remain relevant because they were
24 repeated in the contract documents. However, plaintiffs cannot pick and choose certain provisions
25 and rely on those provisions only. Here, the documents sent to plaintiffs included the definition
26 of permanent total disability at issue. Accordingly, plaintiffs' fraud claim is also properly
27 dismissed on this basis.

28 . . .

**James C. Mahan**
**U.S. District Judge**

- 10 -

### d. Rule 9(b)

BofA also contends that plaintiffs fail to plead their fraud allegations against it with particularity as required by Federal Rule of Civil Procedure 9(b). (Doc. # 50). In light of the court's conclusion that plaintiffs' complaint fails to meet all required elements of fraud, the court need not consider BofA's particularity arguments. Plaintiffs' fraud cause of action will be dismissed.

### e. Judicial estoppel

Plaintiffs attempt to argue that defendants are judicially estopped from seeking dismissal because they filed answers in a purportedly similar California state action. (Docs. # 53, 54). Plaintiffs therefore contend that defendants "concede[] that these causes of action are understandable, defendable, and properly pled." (Doc. # 53).

Plaintiffs' argument is absurd and without merit. Defendants are not judicially estopped from making the instant arguments due to their answers in an unrelated case with a different complaint and different parties. Plaintiffs fail to sufficiently allege fraud against defendants, and this cause of action will be dismissed.

## D. Conspiracy to defraud

Finally, plaintiffs claim that defendants knowingly engaged in a conspiracy to defraud plaintiffs by marketing the accidental disability policies at issue. (Doc. # 45). Defendants move to dismiss this claim on the grounds that plaintiffs' underlying fraud claim is not viable.

To state a claim for civil conspiracy to defraud under Nevada law, a plaintiff must allege: (1) a conspiracy agreement formed by the defendants to unlawfully harm the plaintiff, (2) an act of fraud in furtherance thereof, and (3) resulting damages to the plaintiff. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety,* 110 P.3d 30, 51 (2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670, 672 n.6 (2009). "[A]n underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." *Id.*

Based on the foregoing, plaintiffs' claim for fraud will be dismissed. As a result, plaintiffs' complaint fails to allege a necessary element of the conspiracy to defraud claim. Dismissal of this claim is therefore also appropriate.

James C. Mahan
U.S. District Judge

- 11 -

Because defendants have successfully demonstrated that dismissal of plaintiffs' four claims is proper, the court will dismiss plaintiffs' complaint in its entirety.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' requests for judicial notice, (doc. # 53-1, 54-1), be, and the same hereby are, DENIED.

IT IS FURTHER ORDERED that BofA's motion to dismiss, (doc. # 50), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that National Union's motion to dismiss, (doc. # 51), be, and the same hereby is, GRANTED.

The clerk shall close the case.

DATED February 25, 2015.

_____
UNITED STATES DISTRICT JUDGE